Affirmed and Opinion filed November 6, 2007








Affirmed and Opinion filed November 6, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00328-CV

_______________

 

ANIL B. PATEL, M.D., Appellant

 

V.

 

 

GEORGE H. WILLIAMS, ON BEHALF OF THE ESTATE OF FRANCES
M. MITCHELL AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES, Appellee

                                                                                                                                               


On Appeal from the 240th District Court

Fort Bend County, Texas

Trial Court Cause No. 06-CV-151204

                                                                                                                                               


 

 O P I N I O N








This
appeal pertains to a health care liability suit brought by appellee, George H.
Williams, on Behalf of the Estate of Frances M. Mitchell and on Behalf of all
Wrongful Death Beneficiaries, against appellant, Dr. Anil B. Patel.  The trial
court denied appellant=s motion to dismiss, and this interlocutory appeal followed. 
In his sole issue, appellant contends the trial court erred in denying his
motion to dismiss because appellee=s expert report was insufficient as a
matter of law.[1] 

I. Background

On
February 11, 2005, Frances Mitchell, who suffered from dementia related to
Alzheimer=s Disease, was hospitalized after she fractured and displaced her left
hip.  On March 8, 2005, Dr. Anil Patel discharged her to the Sugar Land Health
Care Center where he would be Mitchell=s treating physician.  To treat
Mitchell=s dementia, Dr. Patel prescribed
Risperdal, a psychotropic drug with side effects including restlessness or a
need to keep moving.  Dr. Patel continued the Risperdal treatment after George
Williams, a family member of Mitchell=s, withheld consent to the use of the
drug.

While at
the Sugar Land Health Care Center, Mitchell received nutrition through a
gastrostomy tube.  On March 27, 2005, nurses noted that Mitchell was very
agitated and pulling on her gastrostomy tube, which she eventually dislodged. 
Sugar Land Health Care Center nurses improperly reinserted the tube.  Mitchell
suffered leakage of gastric contents into the peritoneum as a direct
consequence of the improperly inserted gastrostomy tube.  This leakage resulted
in the formation of an abscess.  Mitchell required multiple operations to
address the abscess and infection stemming from the improperly inserted tube. 
She died on May 22, 2005.  The death certificate identified the cause of death
as small cut gangrene with the underlying cause of mesenteric artery
thrombosis. 








George
Williams filed suit against Dr. Patel and Sugar Land Health Care Center
asserting that their negligence and gross negligence resulted in Mitchell=s death.  Pursuant to section 74.351
of the Civil Practice and Remedies Code, Williams served Dr. Michael Zeitlin=s expert report on Dr. Patel and
Sugar Land Health Care Center.  Dr. Patel filed a motion to dismiss, contending
Dr. Zeitlin=s report was not sufficient to fulfill the requirements of section
74.351.  The trial court denied the motion, and this appeal followed.

II. Analysis

In one
issue, Dr. Patel contends Dr. Zeitlin=s report failed to state the applicable
standard of care and is conclusory and speculative regarding the element of
causation.  We disagree.

We
review a trial court=s ruling regarding the adequacy of an expert report for abuse
of discretion.  Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873,
877 (Tex. 2001).  A trial court commits an abuse of discretion if it acts in an
arbitrary or unreasonable manner without reference to guiding rules or
principles.  See Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).  We
may not substitute our judgment for that of the trial court when reviewing
matters committed to the trial court=s discretion.  Walker v. Packer,
827 S.W.2d 833, 839B40 (Tex. 1992).








Under
section 74.351 of the Civil Practice and Remedies Code, health care liability
claimants must provide an expert report to the defendant no later than 120 days
after filing the original petition.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (Vernon Supp. 2006).  A
defendant may file a motion challenging the adequacy of the report, and the
trial court Ashall grant@ the motion only if it appears that the report does not
represent a good faith effort to comply with the statutory definition of an
expert report.  See Tex. Civ.
Prac. & Rem. Code Ann. '' 74.351(a), (l) (Vernon Supp. 2006). 
In determining whether the report represents a good faith effort, the trial
court=s inquiry is limited to the four
corners of the report, and no inferences may be drawn from information outside
the report.  See Palacios, 46 S.W.3d at 878.  An expert report is
defined as a written report by an expert that provides a fair summary of the
expert=s opinions regarding: (1) the
applicable standard of care; (2) the manner in which the care provided failed
to meet that standard; and (3) the causal relationship between that failure and
the injury, harm, or damages claimed.    See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6) (Vernon Supp. 2006); Palacios,
46 S.W.3d at 878B79.  In compliance with these standards, the expert report
must incorporate enough information to fulfill two purposes: (1) the report
must inform the defendant of the specific conduct the plaintiff has called into
question; and (2) the report must provide a basis for the trial court to
conclude the claims are meritorious.  Palacios, 46 S.W.3d at
879.  A report merely expressing the expert=s conclusions about the standard of
care, breach, and causation fails to fulfill these purposes.  Id.  The
expert must explain the basis for his statements and must link his conclusions
to the facts.  Wright, 79 S.W.3d at 52.  However, to avoid dismissal, a
plaintiff need not present all the evidence necessary to litigate the merits of
her case.  Palacios, 46 S.W.3d at 879.  The report may be informal in
that the information need not fulfill the same requirements as the evidence
offered in a summary-judgment proceeding or at trial.  Id.  Moreover,
the expert is not required to express the causal relationship in terms of any Amagical@ words.  Wright, 79 S.W.3d at
53.

A.        Standard
of Care








Dr.
Patel first contends the report did not comply with section 74.351 because Dr.
Zeitlin did not state the  applicable standard of care.  Although Dr. Zeitlin=s report could have been more
artfully written, we conclude it provided Dr. Patel with a fair summary of the
standards of care applicable to him.  We acknowledge that Dr. Zeitlin did not
segregate his statements regarding standards of care from the other section
74.351 elements.  However, no particular format is required under section
74.351.  The statute simply requires that the report provide a fair summary of
the expert=s opinion as to the applicable standard of care.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6).   Throughout the
report, Dr. Zeitlin imbedded a number of standards of care directly applicable
to Dr. Patel.  First, Dr. Zeitlin stated, A[t]he standard of care requires the
family to consent to the prescription of psychotropic drugs.@  This standard sets out a simple
rule whereby a reasonable physician may not continue a course of treatment
using psychotropic drugs if the patient=s family fails to give its consent to
the treatment.  Additionally, Dr. Zeitlin stated, ARisperdal was not the appropriate
drug for Ms. Mitchell.  The FDA approved Risperdal to treat schizophrenia . . .
.  Risperdal was not approved by the FDA to treat dementia related to
Alzheimers.@  Similar to statements of causation, there is nothing in section 74.351
requiring standards of care to be described using any specific terms, phrases,
or magic words.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(r)(6); see also Wright,
79 S.W.3d at 52 (stating an expert report need not contain certain magical
words to satisfy section 74.351's causation requirement).  Although Dr.
Zeitlin=s statement did not include any words
or phrases such as Athe standard of care is,@ this statement described  standards
of care under which a reasonable physician should not, as a general
proposition, prescribe the wrong drug for his patients; nor should a reasonable
physician prescribe the drug Risperdal, specifically, to treat dementia related
to Alzheimer=s Disease.  This standard was applicable to Dr. Patel as Mitchell=s treating physician.  

To find
an abuse of discretion, we must conclude the trial court acted in an arbitrary
or unreasonable manner without reference to guiding rules or principles.  See
Wright, 79 S.W.3d at 52.  Reasonable people may differ in determining what
is required to provide a fair summary of the applicable standard of care, or
any other section 74.351(r)(6) element.  As such, unless the trial court=s decision is arbitrary or unreasonable,
we may not substitute our judgment for that of the trial court when reviewing
matters committed to the trial court=s discretion.  See Walker, 827
S.W.2d at 839B40.  While we might disagree as to whether Dr. Zeitlin=s report provided a fair summary
regarding each applicable standard of care, we cannot conclude the trial court=s decision was arbitrary or
unreasonable.  Therefore, the trial court did not abuse its discretion in
finding that appellee satisfied the standard of care requirement of section
74.351.

 








B.        Causation

Dr.
Patel further contends Dr. Zeitlin failed to comply with section 74.351 because
his opinions regarding the causal relationship between Dr. Patel=s breach of the standard of care and
the alleged injuries were conclusory and speculative.  We disagree.  It is our
considered opinion the trial court did not abuse its discretion in finding that
Dr. Zeitlin sufficiently outlined the required causal facts.  

In his
report, Dr. Zeitlin presented a chain of events beginning with Dr. Patel=s prescription of Risperdal to
Mitchell and ending with her death.  Dr. Zeitlin stated that Dr. Patel
prescribed Risperdal to a patient for whom the drug was not appropriate and
continued the medication after the family refused to consent to the treatment. 
He referenced nurses notes dated March 27, 2005 that described Mitchell as
agitated and pulling on her gastrostomy tube, behavior consistent with the side
effects of Risperdal.  Dr. Zeitlin noted, after Mitchell removed her
gastrostomy tube, nurses, without consulting the treating physician, improperly
re-inserted the tube.  The nurses= actions caused formula to enter
Mitchell=s body but fail to enter her
stomach.  This formula leakage led to abscess and infection, requiring
surgery.   Although not stated with absolute clarity, Dr. Zeitlin concluded
that Mitchell=s death from small cut gangrene and mesenteric artery thrombosis resulted
from either the earlier abscess and infection or complications from multiple
surgeries.  It is Dr. Zeitlin=s opinion that Dr. Patel=s decision to treat Mitchell=s dementia with Risperdal began a
chain of events ultimately culminating in Mitchell=s death.  While there are many links
in this chain of causation, we cannot conclude that Dr. Zeitlin=s report is insufficient to fulfill
the requirements of section 74.351.  








The
two-fold purpose of an expert report under section 74.351 is to inform the
defendant of the specific conduct the plaintiff has called into question, and
to provide a basis for the trial court to conclude that the claims have merit. See
Palacios, 46 S.W.3d at 878B79.  Pursuant to this standard, we hold Dr. Zeitlin=s report was sufficient to notify Dr.
Patel regarding the specific conduct complained of, and provided a basis for
the trial court to conclude the claims have potential merit. Therefore, we
conclude the trial court acted within its discretion in finding that Dr.
Zeitlin=s report sufficiently addressed the
element of causation.

Appellant=s sole issue is overruled.
Accordingly, the trial court=s order signed March 29, 2007 is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed
November 6, 2007.

Panel consists of Chief Justice
Hedges, and Justices Anderson and Seymore.









[1]  Appellee sued Dr. Patel and Sugar Land Health Care,
LP D/B/A  Sugar Land Health Care Center, however,  Sugar Land Health Care, LP
did not challenge the sufficiency of appellee=s expert report in the trial court.  Therefore, this opinion pertains
to Dr. Patel alone.